JOURNAL ENTRY AND OPINION
{¶ 1} Ruth Lipford appeals the May 22, 2006, judgment entry of the Common Pleas Court, Probate Court Division, denying her motion to stay proceedings, and the June 13, 2006, judgment entry of the court finding her to be incompetent and appointing Eddie Ware guardian of her person and estate. The cases have been consolidated for appeal. For the reasons that follow, we affirm.
 {¶ 2} Ware initiated this action on November 15, 2005, by filing an application for guardianship of then 92-year-old Lipford. On February 22, 2006, Lipford's *Page 3 
attorney filed a motion to dismiss the guardianship application. The motion set forth four grounds for dismissal of the application: 1) the relationship between Ware and Lipford;[1] 2) Ware's lack of legal authority because of his non-relative status; 3) the competency of Lipford; and 4) lack of notice.
 {¶ 3} A pretrial hearing was held before a magistrate on February 23, 2006. At the hearing, counsel for Lipford, Luann Mitchell, informed the court that Lipford did not own the property located at 725 Parkwood Drive, Cleveland, but that she had deeded it to an individual by the name of David Peck, who was rehabilitating the house. Attorney Mitchell did indicate, however, that Lipford was residing in the house while Peck was working on it.
 {¶ 4} The hearing continued the following day, February 24, 2006, before another magistrate. In considering Lipford's motion to dismiss, the magistrate noted that, pursuant to R.C. 2111.02, any interested party could file an application for guardianship and, therefore, overruled Lipford's motion to dismiss as it related to her challenges based on her relationship with Ware and Ware's lack of legal authority because of his non-relative status. The magistrate conceded, however, that the statutory requirements regarding notice may not have been complied with. The magistrate, therefore, continued the hearing until March 6, 2006, so that the statutory requirements could be met. The magistrate stated that it would be determined at the *Page 4 
subsequent hearing whether Lipford needed a guardian and, if so, whether Ware would be suitable.
 {¶ 5} The magistrate stated that, in the meantime, Lipford needed to be interviewed by a social worker from Adult Protective Services. Lipford indicated that she believed she resided at 1706 East 21st Street. Attorney Mitchell[2] indicated that Lipford resided "on and off at the Parkwood Drive address and the address Lipford provided the court. Attorney Mitchell indicated that Lipford would be available at the Parkwood Drive address to be interviewed.
 {¶ 6} On March 6, 2006, a hearing was held before one of the probate court judges. Attorney Mitchell, as well as another attorney, Cynthia Smith, were present on behalf of Lipford. The court inquired of attorney Smith where Lipford was residing, and attorney Smith said that she was living with attorney Mitchell while the repairs to her home were being completed. Attorney Smith indicated that attorney Mitchell's address was 10821 Hampton, in the city of Cleveland. Attorney Smith requested a continuance of the hearing based on an alleged lack of notice to Lipford. The court denied her request.
 {¶ 7} Attorney Marilyn Cassidy, representing the State, questioned attorney Mitchell's presence at the trial table. Attorney Smith responded that attorney Mitchell *Page 5 
was also representing Lipford and had been throughout the proceedings. The court asked attorney Mitchell if she was representing Lipford, to which she responded that her "application says I'm still counsel."
 {¶ 8} Attorney Smith again requested a continuance of the hearing, stating that in the three days that she had been on the case, she did not have an adequate opportunity to review the file and prepare. The court again denied her request.
 {¶ 9} The State called Lipford's treating physician, Dr. Nabil Azar,[3] to testify. Attorney Cassidy asked Dr. Azar the following question: "When did Ms. Lipford first contact you about being her doctor?" Attorney David Smith objected. Attorney Cassidy then explained to the court that she and attorney David Smith had previously discussed HIPPA protections and privacy issues and that the Adult Protective Services' investigation, which was still pending, was an exception to the HIPPA provisions. Attorney Cassidy further informed the court that she did not intend to inquire into the substance of any conversation between Dr. Azar and Lipford concerning her physical condition. The court instructed the doctor that he could answer. Before Dr. Azar could answer, however, attorney Cynthia Smith attempted to raise an issue, was admonished by the court, and ordered that she was not to participate in the proceedings that day. The judge then indicated that attorney Mitchell, attorney Smith's co-counsel, represent Lipford. Attorney Mitchell informed *Page 6 
the court that she was not prepared. The court, however, ordered that the proceedings continue.
 {¶ 10} Dr. Azar testified he first saw Lipford on November 2, 2004, and saw her approximately six times after that, always in the presence of attorney Mitchell. The doctor testified that attorney Mitchell would sometimes aid Lipford in answering his questions. Although Dr. Azar did not test Lipford for cognitive skills, he did state that she was unable to answer basic questions such as the time, date and year. The court then ordered Dr. Azar to conduct an independent evaluation of Lipford.
 {¶ 11} The hearing continued on March 13, 2006, with attorney Smith present on behalf of Lipford. Lipford was not present, as she was in Alabama. Dr. Azar testified regarding his examination of Lipford after the March 6 hearing. He explained that he administered a mini mental exam to her and that she scored zero out of five on the calculation portion, zero out of three on the recall portion, and one out of ten on the orientation portion. The doctor indicated that her total score was indicative of a person who was moderately impaired, and who would be incapable of taking care of herself without assistance.
 {¶ 12} Dr. Azar further testified that he was aware that attorney Mitchell was involved in Lipford's care and that a letter he wrote in July 2005 regarding Lipford's health was written at attorney Mitchell's request. He stated that, although the letter indicated that Lipford was self sufficient and capable of taking care of herself, he wrote that assuming that she was not living by herself. He explained: *Page 7 
 {¶ 13} "* * * she could live wherever she lived as long as somebody was looking after her. She's capable of doing things, but she needed somebody with her. And my impression was somebody was with her when needed like going to doctor's office, having an appointment, making sure she's clean or fed. My understanding is that that was all done through Ms. Mitchell."
 {¶ 14} Dawn Wood, an investigator for the probate court, also testified. Wood stated that Ware wanted guardianship of Lipford as he was concerned for her because she had dementia and attorney Mitchell prevented him from visiting her. Wood also testified that during her first interview of Lipford, Lipford stated that she wanted to live with her grandparents. Lipford also told Wood that "it would be nice" to live with Ware, whom she described as being related to on her father's side. Wood testified that during her second interview with Lipford, Lipford said she lived in Alabama with her grandfather, but then later said she resided on Parkwood Drive.
 {¶ 15} At the conclusion of the hearing, the court found it was in Lipford's best interest that a limited guardian be appointed for the specific purpose of ensuring that Lipford receive a full psychiatric examination to "determine her level of cognitive impairment, if any." The court explained that if the psychiatric evaluation determined Lipford to be competent, the court would dismiss the case. If the evaluation determined, however, that Lipford was incompetent, then the court would consider Ware's application, and any other application, for guardianship. *Page 8 
 {¶ 16} Also at the conclusion of the hearing, attorney Cassidy stated that attorney Smith "mentioned this morning in chambers when we conferred that presently Ms. Ruth Lipford is in Alabama and not in Ohio." While attorney Smith questioned the court's jurisdiction because Lipford was in Alabama, she never argued that Lipford had actually moved to Alabama.
 {¶ 17} Pursuant to the court's order, Lipford returned to Cleveland and submitted to a psychiatric evaluation by Dr. Samuel Nigro, the psychiatrist appointed by the court. Dr. Nigro reported that, after Lipford stated her birthdate was May 25, 1913, "almost everything that followed was probably unreliable." The doctor concluded that "Mrs. Lipford has severe cognitive decline and challenges. This is dementia without a doubt. * * * It is quite evident that this degree of incompetence has been present for several years. She clearly needs a guardian." Dr. Nigro further indicated that Ware, who brought Lipford to the examination, expressed his concern for her and inquired about a physician for her. The doctor noted that Ware "is clearly eager to provide for her appropriately and asked for the name of the doctor in [a] spontaneous, unsolicited fashion."
 {¶ 18} On May 11, 2006, attorney Mitchell filed a motion to stay proceedings, which was denied by the court on May 22, 2006.
 {¶ 19} The final hearing was held on June 9, 2006, at which Lipford was represented by attorney Mitchell. Ware testified and explained that he did not have any felony convictions, worked full-time and was six months away from retirement, *Page 9 
owned his home, and could get a bond if appointed guardian. Ware also testified that he understood all of the requirements for, and responsibilities of, being a guardian. The trial court appointed Ware guardian of Lipford's person and estate.
 {¶ 20} Lipford now raises six assignments of error for our review. Where appropriate, we consider them out of turn.
 {¶ 21} In her first assignment of error, Lipford contends that the probate court denied her due process and equal protection of the law. Her first argument is that she was not afforded notice of the February 23, 2006 hearing. The trial court conceded at the hearing the following day that the statutory requirements may not have been met and, thus, continued the hearing until March 6 so that the requirements could be met. On March 3, 2006, attorney Cynthia Smith filed a motion to continue the hearing, on the grounds that she was newly retained and needed more time to prepare and investigate the case. She made the same argument orally at the March 6 hearing. There was no argument made that the notice requirements still had not been met. We, therefore, find Lipford's argument to be without merit.
 {¶ 22} Lipford's second argument in this assignment of error is that she was denied her right to counsel when the court ordered that attorney Smith was not to participate in the proceedings that day. The court, in essence, issued a contempt order against attorney Smith, which is not subject to review in this appeal. The issue in this argument is whether the trial court should have continued the hearing in light of attorney Mitchell's claim that she was unprepared. *Page 10 
 {¶ 23} A motion to continue a hearing is addressed to the sound discretion of the trial court. Holop v. Holop (1989), 59 Ohio App.3d 51. An appellate court's review of a trial court's denial of a motion to continue is limited to a determination of whether the trial court abused its discretion. Id. A reviewing court will not disturb a trial court's decision if it is supported by some competent, credible evidence.Cleveland v. Northeast Ohio Sewer Dist. (1989), Cuyahoga App. No. 55709.
 {¶ 24} The record in this case demonstrates that Lipford was represented by both attorneys Smith and Mitchell. When attorney Cassidy questioned attorney Mitchell's presence at the trial table, attorney Smith responded that attorney Mitchell was also representing Lipford and had been throughout the proceedings. Further, when the court questioned attorney Mitchell as to whether she was representing Lipford, attorney Mitchell responded that her "application says I'm still counsel." We are not persuaded by attorney Mitchell's claim that she was not prepared to go forward; she was given notice of the March 6 hearing at the February 24 hearing and the record shows that she remained as Lipford's attorney throughout the proceedings. We, therefore, do not find that the trial court abused its discretion by requiring attorney Mitchell to proceed in attorney Smith's absence, and Lipford was not denied her right to counsel.
 {¶ 25} Lipford's next argument, that at the February 23 pretrial she "was held, without her permission, and over her objections and the objection of her counsel, *Page 11 
Attorney Mitchell, in Probate Court Investigator's Dawn Wood's Office," is simply not supported by the record. We also find Lipford's argument that the hearing the following day, February 24, was improper, because it did not afford counsel an adequate amount of time to prepare for an "evidentiary" hearing, without merit. The February 24 hearing was not an evidentiary hearing. Rather, at the hearing a magistrate considered Lipford's motion to dismiss and conceded that the statutory requirements regarding notice may not have been complied with. The magistrate, therefore, continued the hearing until March 6, and specifically stated that it would be determined at the subsequent hearing whether Lipford needed a guardian and, if so, whether Ware would be suitable.
 {¶ 26} Lipford goes on to argue in this first assignment of error that she was "subjected to mere `fishing expedition' hearings." In particular, she argues that Ware filed "a sham pleading," wherein he stated that he was Lipford's nephew, which she contends he is not. Whether Ware was Lipford's nephew was moot because R.C. 2111.02 provides that "any interested party" may file an application for guardianship. The record before us demonstrates that Ware was an interested party.
 {¶ 27} Lipford also argues that the proceedings were "a fishing expedition" because Ware failed to attach a physician's statement with his application pursuant to C.P. Sup.R. 66(A),[4] which provides: *Page 12 
 {¶ 28} "All applications for the appointment of a guardian on the grounds of mental incompetency shall be accompanied by either a statement of a physician or clinical psychologist or a statement that the prospective ward has refused to submit to an examination."
 {¶ 29} Lipford never raised this issue in the trial court. A party's failure to raise an issue at the trial court level acts as a waiver of the issue on appeal. State ex rel. Zollner v. Indus. Comm.,66 Ohio St.3d 276, 278, 1993-Ohio-49, 611 N.E.2d 830, citing State ex rel.Gibson v. Indus. Comm. (1988), 39 Ohio St.3d 319, 530 N.E.2d 916.
 {¶ 30} Lipford next argues that it was improper for the court to proceed with the hearing because she had filed an appeal of the March 6 hearing with this court and a writ of prohibition with the Supreme Court of Ohio. The appeal from the March 6 hearing, however, was not ripe because the court had merely recessed the hearing so that a complete psychiatric exam could be performed on Lipford. Further, the Supreme Court had not issued any writ prohibiting the trial court from going forward.
 {¶ 31} Finally, Lipford contends that the trial court refused "to hear any testimony from the witnesses under subpoena on behalf of Appellant[,]" and cites to a portion of the June 9 hearing. A review of the June 9 transcript, however, reveals that Lipford did not attempt to call any witnesses on her behalf. The portion of the transcript cited by Lipford, rather, reveals that during her questioning of Ware, attorney Cassidy objected on relevancy grounds. The court agreed that the *Page 13 
questioning was not relevant and requested that attorney Mitchell "move on." Attorney Mitchell asked the court if it was limiting her questioning and the court responded: " * * * we're here today to find out whether [Ware] is a qualified, suitable person to become guardian. That's all. Limit yourself to questions that would either say he was or was not." Lipford did not state on the record at the June 9 hearing that she wanted to call any witnesses on her behalf, nor did the trial court deny any such request.
 {¶ 32} Attorney Smith did indicate, however, at the March 13 hearing that she released her subpoenaed witnesses because the court indicated it was going to order a psychiatric evaluation. Attorney Smith requested that she "have an opportunity to put them on at a point in the future," to which the court responded "okay." Lipford's counsel never attempted to call the witnesses at the next and final hearing, however, which was held on June 9.
 {¶ 33} Based upon the above analysis, appellant's first assignment of error is overruled.
 {¶ 34} In her third assignment of error, Lipford contends that the trial court exceeded its limited jurisdiction by hearing the guardianship application because Lipford was not an Ohio resident. In particular, Lipford argues that she was an Alabama resident at the time of the appointment.
 {¶ 35} Under R.C. 2111.02, a guardian may be appointed for a person, their estate, or both, "provided the person for whom the guardian is to be appointed is a *Page 14 
resident of the county or has a legal settlement in the county." "Residence requires the actual physical presence at some abode coupled with intent to remain at that place for some period of time." In reGuardianship of Fisher (1993), 91 Ohio App.3d 212, 215. "`Legal settlement' connotes living in an area with some degree of permanency greater than a visit lasting a few days or weeks." Id. at 216.
 {¶ 36} Lipford claims that "[c]ommencing in August 2004, [she] began her transition[ing] process to be domiciled in the State of Alabama." Ware filed his application for guardianship in November 2005, and Lipford filed her motion to dismiss in February 2006. The motion to dismiss was based on four grounds, none of which were that Lipford was an Alabama, not Ohio, resident. Further, at the first pretrial hearing, which was held on February 23, 2006, attorney Mitchell informed the court that Lipford no longer owned the Parkwood Drive residence, but was living there while Peck, the man to whom she had deeded the property, rehabilitated the house.
 {¶ 37} The following day, February 24, attorney Mitchell represented to the court that Lipford resided "on and off at the Parkwood Drive address and another Cleveland address, which Lipford told the court was her address. Attorney Mitchell indicated that Lipford would be available at the Parkwood Drive address to be interviewed by a social worker.
 {¶ 38} Similarly, at the March 6 hearing, attorney Smith represented to the court that Lipford was residing in Cleveland. In particular, she informed the court that Lipford was residing with attorney Mitchell while the repairs to Lipford's house were *Page 15 
being completed. At that hearing, Dr. Azar, Lipford's treating physician, testified that he first saw her on November 2, 2004, which was after Lipford began her supposed "transition" to Alabama, and saw her approximately six times thereafter.
 {¶ 39} It was not until the next hearing, which was held on March 13, that any mention of Alabama came about. Even then, the issue was brought forth at the conclusion of the hearing by attorney Cassidy, who stated that attorney Smith "mentioned this morning in chambers when we conferred that presently Ms. Ruth Lipford is in Alabama and is not in Ohio." Attorney Smith never argued that Lipford had actually moved to Alabama. We find that the issue of Lipford being an Alabama resident was never properly raised during the trial court proceedings and, thus, has been waived. That notwithstanding, we find there is sufficient evidence in the record to demonstrate that Lipford was a resident of Cuyahoga County. Accordingly, the third assignment of error is overruled.
 {¶ 40} In her fourth assignment of error, Lipford contends that the trial court erroneously admitted Dr. Nigro's expert report. Initially, we note that Lipford did not object to the admission of the report and, in fact, at one point during the June 9 hearing said the report speaks for itself. That aside, trial courts have broad discretion in the admission and exclusion of evidence. State v. Sage (1987),31 Ohio St.3d 173, 510 N.E.2d 343, paragraph two of the syllabus. Absent an abuse of discretion, a reviewing court will not reverse a trial court's ruling concerning the admissibility of evidence. Id. *Page 16 
 {¶ 41} Dr. Nigro's report was not admitted into evidence pursuant to a request by any of the parties. Rather, it was admitted pursuant to the court's own order, which not only stated that Lipford was to submit to a complete mental examination, but also appointed Dr. Nigro to perform the examination. The order was made at the conclusion of the March 16 hearing, after the court heard testimony from Dr. Azar that Lipford's score on the mini mental exam he administered to her was indicative of a person who was moderately impaired and who would be incapable of taking care of herself without assistance.
 {¶ 42} Based on the above analysis, the trial court did not abuse its discretion in admitting Dr. Nigro's report into evidence, and Lipford's fourth assignment of error is overruled.
 {¶ 43} For her fifth assignment of error, Lipford contends that the trial court abused its discretion by precluding evidence related to Ware's competency to act as guardian. Although Lipford's assignment of error relates to the competence of Ware to serve as guardian, the first argument she makes is that "the court precluded all inquiry into the matter of residence of Mrs. Lipford." This assertion is simply not true. As previously mentioned, with the exception of the final hearing, the court inquired into Lipford's residence, and was told that she was living at various places in Cleveland. It was not until the March 13 hearing that any mention of Alabama was made, and even then, it was by attorney Cassidy; attorney Smith never argued that Lipford resided in Alabama. *Page 17 
 {¶ 44} Lipford next argues that questions were raised regarding whether Ware had Lipford's best interests in mind. In particular, Lipford argues that counsel attempted to put on the record that Ware was involved in a prior lawsuit where Lipford was a party and he testified against her, and that counsel was prevented from demonstrating the "fraud" Ware was allegedly perpetrating on the court by representing he was Lipford's nephew. A review of the June 9 transcript indicates that attorney Mitchell never questioned Ware about an alleged prior lawsuit. Much of attorney Mitchell's questioning of Ware was regarding his relationship to Lipford, and the discrepancy between his mother and Lipford's birth certificates.[5]
 {¶ 45} As the trial court noted, however, "[r]ecordkeeping is not perfect. Back in those days in Alabama, that's the way it goes." The trial court then stated: "[t]hat's not the criteria for determining guardianship. Let's get — forget about who his mother was or who his father was. I don't care about that, Lu-Ann (attorney Mitchell). What I care about is whether or not he is a suitable person to be a guardian. He has not perpetrated any fraud in this court. Not at all." Attorney Mitchell still pressed the point about Ware's relationship to Lipford, to which the court told her to "move on." Near the conclusion of attorney Mitchell's questioning, the court indicated that "we've been at it now for over an hour and we haven't gotten very far." The court told *Page 18 
attorney Mitchell to make her record, and she reiterated her point about Ware filing a false pleading.
 {¶ 46} Decisions regarding the appointment of guardians will not be reversed absent an abuse of discretion of the trial court. In re theEstate of Bednarczuk (1992), 80 Ohio App.3d 548, 609 N.E.2d 1310. Our review of the record does not indicate that the trial court abused its discretion in appointing Ware as Lipford's guardian. The trial court was indulgent with attorney Mitchell, but she never directed her questions toward the statutory factors relative to Ware's suitability to act as Lipford's guardian.
 {¶ 47} Counsel representing Ware questioned him relative to the statutory requirements for being a guardian. Ware explained that he did not have any felony convictions, worked full-time and was six months away from retirement, owned his home, and could get a bond if appointed guardian. Ware also testified that he understood all of the requirements for, and responsibilities of, being a guardian.
 {¶ 48} Based on the record, the trial court did not abuse its discretion by appointing Ware guardian of Lipford and the fifth assignment of error is overruled.
 {¶ 49} In her sixth assignment of error, Lipford maintains that the trial court abused its discretion by denying her motion to stay proceedings. We disagree.
 {¶ 50} R.C. 2111.01(B)(1) governs the appointment of limited guardians and provides as follows: *Page 19 
 {¶ 51} "If the probate court finds it to be in the best interest of an incompetent or minor, it may appoint pursuant to divisions (A) and (C) of this section, on its own motion or on application by an interested party, a limited guardian with specific limited powers. The sections of the Revised Code, rules, and procedures governing guardianships apply to a limited guardian, except that the order of appointment and letters of authority of a limited guardian shall state the reasons for, and specify the limited powers of, the guardian. The court may appoint a limited guardian for a definite or indefinite period. An incompetent or minor for whom a limited guardian has been appointed retains all of the incompetent's or minor's rights in all areas not affected by the court order appointing the limited guardian."
 {¶ 52} The standard of review when determining whether a trial court has properly granted or denied a motion to stay proceedings is abuse of discretion. Carter Steel Fabricating Co. v. Danis Building Constr.Co. (1998), 126 Ohio App.3d 251.
 {¶ 53} Lipford's first ground for the motion was that her counsel was not given notice of the appointment of attorney Nelli Johnson as interim guardian. Attorney Johnson was appointed as Lipford's interim guardian at the conclusion of the March 13 hearing. Attorney Smith was at the hearing on Lipford's behalf. Dr. Azar testified that Lipford's total score on the mini mental exam he administered to her indicated that she was moderately impaired, and that a person with such an impairment would be incapable of taking care of herself without assistance. Wood, an investigator for the probate court, also testified and described how Lipford stated during an interview *Page 20 
that she wanted to live with her grandparents. During another interview, Lipford told Wood that she lived in Alabama with her grandfather, but then later said she resided on Parkwood Drive.
 {¶ 54} At the conclusion of the hearing, the court found that it was in Lipford's best interest that a limited guardian be appointed for the specific purpose of ensuring that Lipford receive a full psychiatric examination to "determine her level of cognitive impairment, if any."
 {¶ 55} Upon review, the trial court did not abuse its discretion by denying the motion to stay proceedings based on lack of notice.
 {¶ 56} Lipford's second and third bases for her motion to stay proceedings were that she had changed her domicile to Alabama. As already discussed, during the February 23, 24 and March 6 hearings, it was represented to the court that Lipford resided in Cleveland. It was not until the March 13 hearing that any mention of Alabama was made. Even then, it was attorney Cassidy who put the issue on the record; attorney Smith never argued to the court that Lipford was residing in Alabama. Thus, the trial court properly proceeded, as the evidence was sufficient to demonstrate that Lipford was a Cleveland resident.
 {¶ 57} Lipford's fourth ground for her motion to stay proceedings was that the trial court denied her the opportunity to present witnesses. As already discussed, the record does not support Lipford's contention. Her counsel indicated that she had subpoenaed witnesses for the March 13 hearing, but had released them because of *Page 21 
the court's plan to order Lipford to submit to a psychiatric evaluation. She requested that she be permitted to call the witnesses in the future and the court said "okay." Counsel never attempted at the final hearing, however, to present any witnesses on Lipford's behalf.
 {¶ 58} The fifth ground that Lipford presented was that the court erred in appointing attorney Johnson as "interim" guardian for an indefinite period of time. Attorney Johnson was not appointed as an "interim" guardian, however. Rather, the court appointed her as a limited guardian for the specific purpose of ensuring that Lipford was brought back to Ohio for a psychiatric evaluation. Pursuant to R.C.2111.02((B)(1), a limited guardian may be appointed for a definite or an indefinite period of time.
 {¶ 59} The sixth and final ground for Lipford's motion to stay proceedings was her alleged competency. The record does not support that assertion. Lipford showed confusion when asked about her residence and with whom she lived. Dr. Azar testified that her score on the mini mental exam he administered to her indicated that she was moderately impaired, and that a person with such impairment would not capable of taking care of herself without assistance. In fact, Dr. Azar explained that during the course of his treatment of Lipford, he believed that she was being cared for by attorney Mitchell. Finally, Dr. Nigro opined that Lipford suffered from dementia and had "severe cognitive decline and challenges." He concluded that Lipford "clearly needs a guardian." *Page 22 
 {¶ 60} Based on the record, the probate court properly found that it was in Lipford's best interest to be appointed a guardian. The court, therefore, did not abuse its discretion by denying Lipford's motion to stay proceedings and her sixth assignment of error is overruled.
 {¶ 61} In her second assignment of error, Lipford contends that the plain error doctrine should be invoked to "permit correction of judicial proceedings." In support of this argument, Lipford contends that:
 {¶ 62} "Many errors that might otherwise have been preserved were not so preserved precisely because Appellant Lipford's attorneys * * * were subjected to some of the following, either individually or collectively: 1. Not given notice of hearings; 2. Subjected to an interlocutory appeal filed June 2, 2006 being ignored by the Probate Court when it proceeded with the hearing on June 9, 2006; 3. No adjudication of incompetency was held where Dr. Samuel Nigro's testimony could be disputed; and 4. Although duly under subpoena, Appellant's witnesses which were prepared to testify as to first-hand knowledge of Appellant's competency were not allowed by [the judge] to be called."
 {¶ 63} All of these contentions have been addressed already in this opinion and found to be without merit. Lipford's second assignment of error is, therefore, overruled.
Judgments affirmed.
 It is ordered that appellee recover from appellant costs herein taxed. *Page 23 
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to the Common Pleas Court, Probate Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MARY EILEEN KILBANE, P.J., and MELODY J. STEWART, J., CONCUR
[1] Throughout the proceedings, Ware maintained that he is Lipford's nephew, and Lipford's counsel denied that.
[2] Another attorney, Ed Wade, was also present during the February 24, 2006 hearing, and indicated that he or an attorney from his office would be representing Lipford. Neither Wade nor an associate filed a notice of appearance or were present for any of the subsequent proceedings.
[3] Attorney David Smith was present at the hearing representing Dr. Azar.
[4] Lipford cites C.P. Sup.R. 34(B), which was renumbered, relettered, and amended in 1997 to allow a clinical psychologist to do the expert evaluation.
[5] Ware maintained that his mother and Lipford were sisters, sharing the same father. Ware's mother and Lipford's birth certificates, and his mother's death certificate, did not indicate that relationship, however. *Page 1